FILED
 2014 Mar-14  PM 03:52
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **LESIA DOUTHARD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CASE NO.  1:12-CV-2927-SLB** |
| ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** ) ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Lesia Douthard brings this action pursuant to 42 U.S.C. § 405(g),[1] seeking review of the Commissioner of Social Security's final decision denying her application for a period of disability, disability insurance benefits ["DIB"], and supplemental security income ["SSI"]. Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

### I. PROCEDURAL HISTORY

Ms. Douthard initially filed an application for a period of disability and DIB, and an application for SSI on April 20, 2009. (Doc. 6-3 at R.11.)[2] Her claims were denied initially. (*Id.*) Thereafter, she requested a hearing before an Administrative Law Judge ["ALJ"],

---

[1]The judicial review provision for a DIB claims, 42 U.S.C. § 405(g), also applies to claims for SSI, *see*  42 U.S.C. § 1383(c)(3).

[2]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

which was held on January 24, 2011, in Chicago, Illinois.  (*Id*.)  After the hearing, the ALJ found that, while Ms. Douthard was unable to perform any past relevant work, she was capable of performing jobs such as assembler, inspector, and hand packager.  (*Id*. at R.23-24.)  In light of these findings, the ALJ denied Ms. Douthard's request for a period of disability, DIB, and SSI on March 23, 2011.  (*Id.* at R.24.)

Ms. Douthard then requested the Appeals Council to review the ALJ's decision.  (*Id*. at R.7.)  The Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision.  Therefore, [it] denied [Ms. Douthard's] request for review."  (*Id*. at R.1.)  The ALJ's decision is the final decision of the Commissioner.  (*Id*.)

Following denial of review by the Appeals Council, Ms. Douthard filed an appeal in this court.  (Doc. 1.)

## II.  STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one:  "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings and reviews questions of law de novo.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it]

must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cor. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983))(internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)(internal quotations and citations omitted)

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, DIB, and/or SSI. *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB and SSI benefits] if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(1); *see also* 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[3] 20 C.F.R. § 404.1572; 20 C.F.R. § 416.972. If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience.

---

[3]The regulations state:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.

20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[4]

The ALJ found that Ms. Douthard had not engaged in substantial gainful activity since November 2, 2008, the alleged onset date. (Doc. 6-3 at R.13.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not

---

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523; 20 C.F.R. § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Douthard had the following severe impairments: "morbid obesity, mild obstructive sleep apnea 'successfully treated with CPAP,' mild osteoarthritis of the left knee, asthma/chronic obstructive pulmonary disease, bilateral lower leg edema, degenerative disc disease of the lumbosacral spine at L5-S1 with facet arthropathy, and depressive disorder not otherwise specified." (Doc. 6-3 at R.13 [internal citations omitted].) Also, the ALJ found Ms. Douthard's "atypical chest pain and history of drug and alcohol abuse [were] not severe impairments because they do not cause more than minimal functional limitations." (*Id*. at R.19 [internal citations omitted].)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Douthard did not have an impairment or combination of impairments that met or medically equaled a Listing. (Doc. 6-3 at R.19.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); 20 C.F. R. § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work. 20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b). "Past relevant work is work that

[the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it. 20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled. 20 C.F.R. § 404.1560(e); 20 C.F.R. § 416.920(e). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

> The ALJ found that Ms. Douthard had the following RFC:
>
> [T]he claimant has the residual functional capacity to lift and/or carry 10 pounds frequently and 20 pounds occasionally; sit for 6 hours and stand/walk for 2 hours in an 8-hour workday with an option to sit or stand at will; and perform unlimited pushing and pulling. She can occasionally climb stairs, stoop, crouch, crawl, and kneel; but she should never climb ladders. She needs to avoid concentrated exposure to environmental pollutants, hazardous machinery, and unprotected heights; and she should not operate heavy machinery. She needs to use a cane to walk. She is capable of performing simple, routine, and repetitive tasks with no more than occasional contact with the general public. She may be off task for 10 to 12 percent of the workday and may . . . have up to 2 absences per month.

(Doc. 6-3 at R.20.) The ALJ found that Ms. Douthard could not perform her past relevant work because such work was performed at a heavy exertional level. (*Id*. at R.23.)

As for Ms. Douthard's other vocational factors, the ALJ found Ms. Douthard was 44 years old, a younger individual, on the alleged onset date. (*Id*.) She had a limited education and was able to communicate in English. (*Id*.) Also, she found that whether Ms. Douthard had any transferable job skills was not material to her decision. (*Id*.)

**5. Other Work in the National Economy**

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant – in light of her RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 404.1520(c)(1); 20 C.F.R. § 416.920(c)(1). The regulations provide:

> If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience. Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); 20 C.F. R. § 416.960(c)(1). If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f). If, however, the Commissioner finds that the claimant can perform other work, the claimant has the burden to prove she in not capable of performing such other work.[5]

---

[5]The Eleventh Circuit has noted:

> In practice, the burden temporarily shifts at step five to the Commissioner. *See Jones* [*v. Apfel*], 190 F.3d [1224,] 1228 [(11th Cir. 1999)]. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. *See id*. In order to be considered disabled, the claimant must then prove that

Because the ALJ found Ms. Douthard could not perform a full range of sedentary work, she consulted a Vocational Expert [VE] to determine whether any jobs exist in the national economy that Ms. Douthard, considering her RFC and her vocational factors, could perform. The VE testified that an individual with Ms. Douthard's limitations and vocational factors could perform the jobs of assembler, inspector, and hand packager, which are jobs that exist in significant numbers in the Chicago region.[6] (Doc. 6-3 at R.23-24, R.70.) Based on this testimony, the ALJ found Ms. Douthard could perform other work, and, therefore, she found Ms. Douthard was not under a disability from November 2, 2008, through March 23, 2011. (*Id*. at R.24.)

## B. DOUTHARD'S ISSUES ON APPEAL

Ms. Douthard raises two issues on appeal: (1) The ALJ improperly relied on the Medical/Vocational Guidelines [the Grids] to determine that plaintiff was not disabled, and (2) the ALJ improperly relied on inconsistent testimony from the ALJ. Neither of these issues supports reversal of the ALJ's decision.

---

> he is unable to perform the jobs that the Commissioner lists. *See id.* The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations. *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999)(quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)( "The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act")).

*Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

[6]At the time of the ALJ's decision, Ms. Douthard lived in Chicago, Illinois. (Doc. 6-3 at R.8.) By the time the Appeals Council issued its decision, Ms. Douthard had moved to Gaadsden, Alabama,. (*Id*. at R.1.)Division

**1. Application of the Grids.**

Ms. Douthard contends, "The *Medical/Vocational Guidelines* are not applicable to a disability claimant's claim of disability if the claimant cannot perform a full range of work at a given level of exertion or if the disability claimant has non-exertional impairments that significantly limit basic work skills." (Doc. 8 at 6 [citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)].) She argues –

> [F]rom the plaintiff's perspective, the limitation to no more than occasional contact with the general public, the limitation that the plaintiff may be off-task 10 to 12% of the work day and the limitations that the plaintiff may have up to two absences per month are all non-exertional limitation[s] that would not allow the direct application of the *Medical/Vocational Guidelines* as a basis for decision making in this disability case.

(*Id*. at 7.)

In her decision, the ALJ stated:

> **10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).**
>
> In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations

>  (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).
>
>  The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant. The vocational expert testified that an individual with claimant's residual functional capacity could perform representative sedentary occupations in the Chicago region such as assembler (7,000 jobs); inspector (2,000 jobs); and hand packager (3,000 jobs).
>
>  Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. However, Dr. [Richard] Hamersma [the VE] also stated that hand packager [occupation] is listed in the DOT as medium [exertional level], but these jobs are found at all exertional levels. Also, the DOT does not specifically provide for a sit stand option. Dr. Hamersma stated that his testimony as to sedentary jobs with a sit/stand option is based on his professional experience.
>
>  Accordingly, based on a residual functional capacity for the full range of sedentary work, considering the claimant's age, and education, a finding of "not disabled" is reached by direct application of the Medical-Vocational Rule 201.25 and Rule 201.19.[7]

(Doc. 6-3 at R.23-24 [footnote added].)

The court finds that the ALJ's decision was based on her determination of plaintiff's RFC, her vocational factors, and the testimony of the VE. (*See id*. at 23 ["Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs

---

[7]Rule 201.19, from Table No. 1 – "Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s)," indicates a finding of not disabled for a "[y]ounger individual age 45-49," with a limited or less education and no transferable work skills; Rule 201.25 is the same except for a [y]ounger individual age 18-44. 20 C.F.R. Pt. 404, Subpt. P, App. 2.

12

that exist in significant numbers in the national economy that the claimant can perform."]; *id*. at 23-24 ["The vocational expert testified that an individual with claimant's residual functional capacity could perform representative sedentary occupations in the Chicago region . . . ."].) The court finds that the ALJ did not base her decision on application of the Grids, despite her statement to the contrary.

Nevertheless, even if the court found that the ALJ had incorrectly applied the Grids, such error would be harmless "because the correct application would not contradict the ALJ's ultimate findings." *Denomme v. Commissioner of Social Security*, 518 Fed. Appx. 875, 877 (11th Cir. 2013)(citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *see also Miller v. Commissioner of Social Security* 241 Fed. Appx. 631, 635 and n.1 (11th Cir. 2007).

Therefore, the court finds no reversible error based on the ALJ's statement that she had determined Ms. Douthard was not disabled based on the Grids.

### 2. Vocational Expert's Testimony Is Not Inconsistent

Ms. Douthard contends that the VE's testimony is inconsistent and, "based on the acceptable off-task tolerance acknowledged by the ALJ, the plaintiff would exceed the two absences per month and would not be able to sustain competitive employment without excessive absenteeism." (Doc. 8 at 9-10.)

On direct examination by the ALJ, the VE testified:

>  Q. How much off-task time is permitted?
> 
>  A. Up to 10 to 12 percent.

13

> Q. And how must absence is permitted?
>
> A. Up to two days a month.

(Doc. 6-3 at 71.) Plaintiff contends:

> The testimony of the vocational expert concerning the amount of off-task time tolerated by employers and the amount of absenteeism tolerated by employers is inconsistent. If a pencil is put to paper on the 12% time off-task for a worker during an average day, the total absenteeism or being off-task during an entire month would exceed the two days per month absenteeism tolerance.
>
> Consider this. A 12% off-task tolerance amounts to 57.6 minutes per day or almost one hour per day. If this is rounded to one hour per day off-task, there would be 21 hours during the average work month when the plaintiff would be off-task. Twenty-one work hours equates to 2 complete 8-hour work days and 5 hours of another work day. This represents just over 2 and one-half days of full absenteeism in any given month. This 12% off-task tolerance results in 2 and one-half days plus of absenteeism. According to the vocational expert, absenteeism permitted in unskilled entry level work would be up to two days per month with presumably the plaintiff's termination from employment if they exceed that tolerance.
>
> The conclusion that must be drawn is that, based on the acceptable off-task tolerance acknowledged by the ALJ, the plaintiff would exceed the two absences per month and would not be able to sustain competitive employment without excessive absenteeism. The combination of exertional, postural, manipulative and non-exertional limitations that are part and parcel of the ALJ's residual functional capacity assessment describe an individual who could not sustain competitive employment 8 hours per day, 5 days per week without excessive absenteeism. Based on the residual functional capacity assessment noted by the ALJ in her decision, disability is established.

(Doc. 8 at 9-10.) The court rejects Ms. Douthard's argument that the VE's testimony is inconsistent.

The court understands the VE's testimony regarding "off-task" time to refer to breaks during the work day when Ms. Douthard would not be working.  (*See* doc. 6-3 at R.72-74 [discussion of scheduled and unscheduled breaks].)  His testimony regarding absences per month refers to days Ms. Douthard would not be at work.  (*See id*. at 71.)  A claimant at work, but on a break or otherwise not working, is not "absent," but she is "off task."  (*See* doc. 9 at 10 ["Plaintiff improperly attempts to conflate the two separate issues of off-task time permitted during a workday and the number of absences from work permitted per month.  The former concerns the time an individual would be off-task while she is actually working whereas the latter concerns the number of days per month the individual would not even be at work." (internal citations omitted)].)

The court finds no error in the VE's testimony that the jobs at issue require an employee to be absent from work no more than two days per month and to be off-task no more than ten to twelve percent of the day when she is at work.

Based on the foregoing, the decision of the ALJ, as adopted by the Commissioner, denying Ms. Douthard's claim for a period of disability, DIB, and SSI is due to be affirmed.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 14th day of March, 2014.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE